IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RONALD C. WILLIAMS,** | : |
| **Plaintiff** | : No. 1:11-CV-0396 |
| v. | : |
| **JOSEPH P. NISH,** *et al.*, | : (Judge Rambo) |
| **Defendants** | : |

# **M E M O R A N D U M**

*Pro se* Plaintiff Ronald C. Williams commenced this action by filing a complaint on March 1, 2011 (Doc. 1), followed by an amended complaint on July 1, 2011 (Doc. 16). In the amended complaint, Plaintiff alleged violations of his First Amendment right to the free exercise of religion and the Religious Land Use and Institutionalized Persons Act (RLUIPA). The case was referred to former Magistrate Judge Malachy E. Mannion, now United States District Court Judge, for preliminary review.

On February 29, 2012, Defendants filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 46.) On August 7, 2012, Judge Mannion issued a report recommending that Defendants' motion be granted as to most of Plaintiff's claims, but denied as to Plaintiff's claims related to (1) prayer and smudging (blessing) ceremonies, and (2) the disposal of ceremonial seeds, referred to as "Three Sisters." (Doc. 60.) On October 16, 2012, the court adopted Judge Mannion's report and recommendation. (Doc. 68.) On February 22, 2013, the court adopted a report from Magistrate Judge Martin C. Carlson recommending that the case be listed for trial, and scheduled trial for May 13, 2013.

(Doc. 77.) In the meantime, defense counsel withdrew their appearances from this matter (Docs. 76 & 80), and new defense counsel entered their appearances (Docs. 75 & 79). On April 18, 2013, new defense counsel filed a motion for leave to file a renewed motion for summary judgment. (Doc. 92.) On April 19, 2013, the court granted Defendants' motion, accepted the renewed motion for summary judgment, and continued jury selection and trial. (Doc. 93.)

The renewed motion became ripe on June 6, 2013, when Defendants filed a reply brief (Doc. 94). However, in the interim, Williams filed another action, *Williams v. Givens, et al.*, assigned to docket number 1:13-CV-0387, in which he alleged violations of the First, Fifth and Fourteenth Amendments claiming the Defendants destroyed documents and materials related to the captioned case. As a result of the filing of the new case, an order issued on June 28, 2013, deferring disposition of the pending renewed motion for summary judgment. (Doc. 107.)

By order dated January 5, 2015 in case number 1:13-CV-0387, this court granted Defendants' motion for summary judgment. The renewed motion for summary judgment in the captioned case is now ripe for disposition. For the reasons that follow, Defendants' motion will be granted.

**I.      Background**

At this point, only two claims remain before the court: (1) Plaintiff's claim that he and other Native Americans were forced to conduct prayer and smudging ceremonies outdoors in cold or adverse weather conditions; and (2) Plaintiff's claim related to the destruction and failure to replace the Three Sisters seeds, which are used as ceremonial relics in the Native American religion. Judge

Mannion's report and recommendation granting in part and denying in part summary judgment provided a detailed recitation of the factual background that precipitated this action. (*See* Doc. 60.) Accordingly, for present purposes, it is sufficient to state the following summary of relevant facts.

    A.    Facts[1]

Smudging is a Native American practice that involves burning tobacco products to cleanse and pray. (Doc. 60, p. 3.) Plaintiff claims that he was forced to conduct smudging ceremonies outdoors during inclement weather, and that ceremonies were cancelled by prison officials on several occasions. (*Id.* at pp. 13, 14; *see also* Plaintiff's Response to Status Report, Doc. 83.) Plaintiff alleges in his amended complaint that "the practice of relegating all Native American worship services to the outdoors in whatever weather conditions, . . . constitutes a violation of the Plaintiff's right to the Free Exercise of religion as guaranteed by the First Amendment . . . ." (Doc. 16, ¶ 17.) According to Plaintiff's verified response to Defendants' status report (Doc. 83), indoor ceremonies were permitted on four occasions between January and March 2013.

The "Three Sisters" are corn, bean, and squash seeds that serve as religious relics. The seeds, which had been provided by an outside organization, were discarded by prison staff. (Doc. 60, p. 6.) This prompted Plaintiff to file an

---

[1] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to Plaintiff, the non-moving party. The facts set forth are undisputed, unless otherwise noted. The court notes that Plaintiff did not submit a counter-statement of material fact as required under Local Rule 56.1. Plaintiff did however submit a brief in opposition (Doc. 103) and an affidavit in opposition (Doc. 104) to Defendants' motion. However, neither document directly responds to Defendants' enumerated statements of fact nor contains citations to the record, as required by the rule. Nevertheless, the factual record at this point is well-established in light of the previous motion for summary judgment. Having reviewed that record, and the parties' current submissions, the court is able to determine where any genuine issue of material fact exist.

inmate grievance, which was upheld by the grievance officer. (*Id.*; *see also* Doc. 98, Defendants' Statement of Material Facts ("SMF"), ¶ 8.) In upholding the grievance, the prison agreed to replace the seeds and adopt procedures to ensure appropriate handling and storage of sacred relics used by the Native American Community. (*Id.*) Plaintiff claims in his amended complaint that the replacement seeds were never distributed, in violation of his First Amendment right to freedom of religion, and the proposed procedures were never adopted, in violation of the Due Process Clause of the Fourteenth Amendment. (Doc. 16, ¶¶ 13, 22; Doc. 60, p. 6.) On February 1, 2013, the Religious Activities Procedures Manual, Administrative Directive 819 (DC-ADM 819) was amended to permit inmates to maintain and store the Three Sisters in their cells as an alternative to storage of the seeds in the prison's Property Room. (SMF ¶¶ 13-17; Doc. 98, Attachment 2.)

### B. Procedural History

On April 19, 2013, the court continued the trial scheduled to commence on May 13, 2013, and accepted for filing Defendants' renewed motion for summary judgment. (Docs. 93 & 94.) On April 26, 2013, Defendants filed a brief in support and statement of material facts. (Docs. 97 & 98.) On May 23, 2013, Plaintiff filed a brief in opposition to the motion and an affidavit in support of the brief in opposition. (Docs. 103 & 104.) On June 6, 2013, Defendants filed a reply brief. (Doc. 105.) Thus, the motion is ripe for disposition. On June 27, 2013, Plaintiff, without seeking leave of court as required by M.D. Pa. Local Rule 7.7, filed a "final" reply brief. (Doc. 106.) In consideration of Plaintiff's *pro se* status, the court has accepted and reviewed the brief.

## II.     <u>Standard</u>

Federal Rule of Civil Procedure 56 sets forth the standard and procedures for the grant of summary judgment. Rule 56(a) provides, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law. Fed R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id.* at 248. When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party," and draw all reasonable inferences in favor of the same. *Hugh v. Butler Cnty. Family YMCA,* 418 F.3d 265, 267 (3d Cir. 2005).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex*, 477 U.S. at 324. "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat. Ass'n,* 601 F.3d 212, 216 (3d Cir. 2010). The nonmoving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations

omitted); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23. "Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of W. Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

### III.     Discussion

Defendants' motion raises two primary arguments for summary judgment. First, Defendants argue that Plaintiff's claim regarding smudging ceremonies being held outdoors is unexhausted because Plaintiff never filed a grievance with the Department of Correction's ("DOC") inmate grievance system, and that this failure to exhaust precludes Plaintiff from seeking relief in federal court. Second, Defendants argue that Plaintiff's April 2, 2013 "Response to Status Report," wherein Plaintiff states "the seeds were finally replaced" (Doc. 83 ¶ 4) constitutes an admission that the seeds have been replaced, and therefore no genuine issue of material fact remains as to this claim. The court will address each argument in turn.

#### A.     Prayer and Smudging Ceremonies

Under the Prison Litigation Reform Act of 1996 ("PLRA"), an inmate is required to exhaust all administrative remedies with respect to prison conditions

prior to filing suit. *See Griffin v. Lockett*, 344 F. App'x 722, 723 (3d Cir. 2009). Specifically, the PLRA provides that:

> No action shall be brought with respect to prison conditions [under section 1983 of this title], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e (a). The Third Circuit has held that this is a "bright-line rule" and that "inmate-plaintiffs must exhaust all available administrative remedies." *Nyhuis v. Reno*, 204 F.3d 65, 75 (3d Cir. 2000). Failure to exhaust administrative remedies is an affirmative defense that must be pleaded and proven by Defendants. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

Here, Defendants point out that the DOC maintains an inmate grievance system that permits any inmate to seek review of problems that may arise during the course of confinement. (Doc. 97, p. 7 (citing 37 Pa. Code § 93.3(a)(West 2002).) Defendants further assert that, from January 1, 2009 to the present, Plaintiff filed six grievances, none of which addressed the location of the prayer and smudging ceremonies. (*See* Doc. 98, ¶¶ 3, 10.) The court has reviewed the six grievances attached to Defendants' statement of material facts (Doc. 98, Attachment 1), and agrees that Plaintiff never specifically grieved that the prayer and smudging ceremonies were being held outdoors in inclement weather or cancelled altogether. Thus, this claim is unexhausted.[2] However, Plaintiff argues that Defendants have

---

[2] The only mention of an outdoor ceremony appears in Plaintiff's appeal of Grievance No. 287242, dated October 7, 2009, wherein Plaintiff states "A member of the administration met with members of the circle during ceremony being held outdoors and stated there would be no smoking of personal tobacco while outside conducting either ceremony or culture class." (Doc. 98, Attachment 1, Exh. D.) The import of this grievance, however, is not that Plaintiff is being forced to hold prayer and smudging ceremonies outdoors, but rather that smoking tobacco is prohibited during ceremony or class.
(continued...)

waived this affirmative defense by failing to assert it in a timely manner. The court disagrees.

As stated, failure to exhaust administrative remedies is an affirmative defense that Defendants must plead and prove. *See Ray*, 285 F.3d at 295. "The purpose of requiring the defendant to plead available affirmative defenses in his answer is to avoid surprise and undue prejudice by providing the plaintiff with notice and the opportunity to demonstrate why the affirmative defense should not succeed." *Robinson v. Johnson*, 313 F.3d 128, 134-35 (3d Cir. 2002). Therefore, the defense should be raised as early as possible in the litigation. A party who fails to raise failure to exhaust in a timely fashion may be deemed to have waived the defense. *McCoy v. Board of Trs. of Laborers' Int'l Union Local No. 222 Pension Plan*, 188 F. Supp. 2d 461, 467-68 (D. N.J. 2002), *aff'd*, 60 F. App'x 396 (3d Cir. 2003).

Plaintiff argues that Defendants have waived the defense because "Defendants failed to raise any facts or exhaustion in any motion to dismiss, or in their answer, or by the Summary Judgment motion before the Court . . . ." (Doc. 103, ¶ 15.) Defendants counter, arguing that the defense was properly preserved because "failure to state a claim" was asserted as an affirmative defense in their amended answer. (Doc. 105, p. 5.) However, a general assertion of "failure to state a claim" is not the equivalent of pleading a failure to exhaust administrative remedies. Furthermore, there is no explanation from Defendants as to why this argument was not raised in the first summary judgment motion. Nevertheless, "a

---

² (...continued)
The mere mentioning of an outdoor ceremony is insufficient to render this claim exhausted.

court may in its discretion consider an untimely assertion of an affirmative defense where [the] delay appears not to have been for tactical or other improper reasons, or most important, where delay did not prejudice the plaintiff's case." *Conrad v. Wachovia Grp. Long Term Disability Plan*, 2010 U.S. Dist. LEXIS 98646, *22-23 (D. N.J. Sept. 21, 2012) (citing *Eddy v. V.I. Water & Power Auth.*, 256 F.3d 204, 209-10 (3d Cir. 2001)).  Said another way, "the barometer for determining whether a post-answer exhaustion defense can be raised is whether the opposing party has notice of the defense sufficient to avoid prejudice."  *Baker v. Beard*, 2006 U.S. Dist. LEXIS 41441, *10 (M.D. Pa. June 21, 2006) (internal citations and quotations omitted).

      Although Defendants could have, and should have, raised the defense of failure to exhaust at an earlier stage in the litigation, nothing in the record suggests that Defendants' delay was for tactical or improper reasons.  Indeed, Plaintiff does not argue that Defendants acted in bad faith.  More importantly, the delay will not cause Plaintiff to suffer any appreciable prejudice.  Here again, Plaintiff does not argue or identify any specific prejudice he might incur as a result of the delay, nor does the court detect any prejudice.  Clearly, Plaintiff was aware of the exhaustion requirement because he specifically addressed the issue in his amended complaint, wherein Plaintiff stated broadly that he "employed the Inmate Grievance system at SCI-Waymart to address the problems identified within the instant complaint," but did not specifically identify any grievances regarding the location of the prayer and smudging ceremonies.  (*See* Doc. 16, Am. Compl., Section IV, "Exhaustion of Legal Remedies" ¶ 14.)  Furthermore, Plaintiff is not prejudiced in terms of his ability to contest the defense because he had an opportunity to do so in his response to the

9

court may in its discretion consider an untimely assertion of an affirmative defense where [the] delay appears not to have been for tactical or other improper reasons, or most important, where delay did not prejudice the plaintiff's case." *Conrad v. Wachovia Grp. Long Term Disability Plan*, 2010 U.S. Dist. LEXIS 98646, *22-23 (D. N.J. Sept. 21, 2012) (citing *Eddy v. V.I. Water & Power Auth.*, 256 F.3d 204, 209-10 (3d Cir. 2001)).  Said another way, "the barometer for determining whether a post-answer exhaustion defense can be raised is whether the opposing party has notice of the defense sufficient to avoid prejudice."  *Baker v. Beard*, 2006 U.S. Dist. LEXIS 41441, *10 (M.D. Pa. June 21, 2006) (internal citations and quotations omitted).

Although Defendants could have, and should have, raised the defense of failure to exhaust at an earlier stage in the litigation, nothing in the record suggests that Defendants' delay was for tactical or improper reasons.  Indeed, Plaintiff does not argue that Defendants acted in bad faith.  More importantly, the delay will not cause Plaintiff to suffer any appreciable prejudice.  Here again, Plaintiff does not argue or identify any specific prejudice he might incur as a result of the delay, nor does the court detect any prejudice.  Clearly, Plaintiff was aware of the exhaustion requirement because he specifically addressed the issue in his amended complaint, wherein Plaintiff stated broadly that he "employed the Inmate Grievance system at SCI-Waymart to address the problems identified within the instant complaint," but did not specifically identify any grievances regarding the location of the prayer and smudging ceremonies.  (*See* Doc. 16, Am. Compl., Section IV, "Exhaustion of Legal Remedies" ¶ 14.)  Furthermore, Plaintiff is not prejudiced in terms of his ability to contest the defense because he had an opportunity to do so in his response to the

motion. Even there, Plaintiff did not substantively contest the defense, arguing only that Defendants waived the defense. Simply put, Plaintiff does not dispute that he failed to exhaust his administrative remedies relative to his claim regarding prayer and smudging ceremonies. Under such circumstances, courts have routinely considered the defense when raised for the first time on summary judgment. *See, e.g., Brown v. Deparlos*, 492 F. App'x 211, 216 (3d Cir. 2012) (affirming district court's finding of no prejudice where failure to exhaust not argued until motion for summary judgment); *Baker*, 2006 U.S. Dist. LEXIS 41441 at *10 (granting summary judgment for the defendants on failure to exhaust defense, where defense raised for the first time on summary judgment, and finding that "Defendants have raised their exhaustion defense at an appropriate point in time since they do so prior to adjudication.").

In short, the court concludes that Defendants did not waive the failure to exhaust defense, and, based on the record before the court, it is clear that Plaintiff failed to exhaust his administrative remedies on this claim prior to filing this case. Accordingly, Defendants' motion for summary judgment will be granted as to this claim.

### B. Three Sisters

As stated, the basis for Plaintiff's claim regarding the Three Sisters is that the discarded seeds have not been replaced, and new storage and handling procedures have not been established. However, on February 19, 2013, Defendants filed a status report, wherein they represented that "Defendants believe the injunctive aspect of the remaining claims is moot because . . . the Three Sisters seeds have been replaced, distributed to Native American inmates, and the remaining seeds

are now kept by the Chaplain rather than in the institution's property room." (Doc. 73, p. 2.) In response, Plaintiff filed the aforementioned "Response to Status Report." (Doc. 83.) In that filing, Plaintiff states: "[I]n the response the Chaplain assured Plaintiff that the destroyed seeds would be replaced by the institution. *[T]he seeds were finally replaced* by funds from the Chief of the Deleware [sic] Nation, not funds from the institution as your report portrays." (*Id*., ¶ 4 (emphasis added).) Defendants argue that Plaintiff's admission that the seeds have been replaced resolves any issues of material fact, and a grant of summary judgment for Defendants is appropriate. In further support, Defendants submitted the unsworn declaration of Reverend William A. Gagas, wherein Reverend Gagas states that he procured corn, bean, and squash seeds, and personally witnessed the distribution of the seeds to Native American inmates, including Plaintiff, on December 13, 2012. (Doc. 98, SMF ¶¶ 19, 20; Doc. 98, Attachment 2.) The declaration also states that Section 3 of the DC-ADM 819 was amended on February 1, 2013. The amended policy now classifies Native American medicine bags and their contents, including the Three Sisters, as "individual sacred objects," instead of "communal sacred objects." Individual sacred objects may be maintained as personal possessions of the inmate, whereas communal sacred objects are maintained in the Religious Services Area of the prison. (SMF, ¶¶ 15-17; Doc. 98, Attachment 2.) Thus, Defendants argue, Plaintiff's concerns about storage of the Three Sisters have been addressed.

In response to Defendants' assertion that the seeds have been distributed, and notwithstanding Plaintiff's own assertion in his April 2, 2013 "Response to Status Report" that the seeds have "finally" been distributed, (*see* Doc. 83), Plaintiff now responds to this argument by stating in his affidavit in opposition

to Defendants' motion that "THIS DID NOT HAPPEN!" (Doc. 104, ¶ 3 (emphasis in original).) Plaintiff continues: "from October 3, 2012 until this date I have not seen or been offered any Sacred Three Sisters seeds by any individual at S.C.I. Waymart." (*Id.* (emphasis in original).) In support, Plaintiff notes that December 13, 2012, the date Reverend Gagas asserts he witnessed the distribution of the seeds, was a Thursday, and "[t]he [N]ative American circle does not meet on Thursday, Wednesday's, or Friday's." (Doc. 103, ¶ 31.) Thus, Plaintiff argues, even if seeds were distributed on December 13, 2012, not all Native Americans received the seeds. (Doc. 103, ¶ 32.)

Despite the contradiction created by Plaintiff's affidavit, the court concludes there is no genuine issue of material fact that the Three Sisters have been redistributed. In so doing, the court invokes the "sham affidavit" doctrine, which provides as follows:

> A sham affidavit is a contradictory affidavit that indicates only that the affiant cannot maintain a consistent story or is willing to offer a statement solely for the purpose of summary judgment. A sham affidavit can not give rise to a genuine issue of fact because it is merely a variance from early deposition testimony, and therefore no reasonable jury could rely on it to find for the nonmovant . . . . [I]f it is clear that an affidavit is offered solely for the purposes of defeating summary judgment, it is proper for the trial judge to conclude that no reasonable jury could accord that affidavit evidentiary weight and that summary judgment is appropriate.

*Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). Stated more succinctly, the doctrine states that "a party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict." *Nationwide Mut. Ins. Co. v. Shaw*, 491 F. App'x 353, 360 (3d Cir. 2012) (quoting

*Baer v. Chase*, 392 F.3d 609, 624 (3d Cir. 2004)). The Third Circuit has adopted a "flexible approach" to the doctrine in the sense that "not all contradictory affidavits are necessarily shams," and "when there is independent evidence in the record to bolster an otherwise questionable affidavit, courts generally have refused to disregard the affidavit." *Jiminez*, 503 F.3d at 254 (quoting *Baer*, 392 F.3d at 624-25.)

Typically, the sham affidavit doctrine is invoked when deposition testimony contradicts a prior or subsequent affidavit. In those instances, a court may disregard the contradicting affidavit because "depositions are more reliable than affidavits." *Id.* at 253. This situation is different in that the contradictory statements do not include deposition testimony. Here, the court is faced with a verified statement in Plaintiff's "Response to Status Report" (Doc. 83) that is directly contradicted by Plaintiff's affidavit in opposition to Defendants' motion for summary judgment (Doc. 104). As an initial matter, the court affords the same weight to Plaintiff's affidavit and Response to Status Report because the only differences between the two are that the former is labeled "affidavit" and is witnessed and signed by a notary public. Notably, Plaintiff's Response to Status Report contains a verification signed by Plaintiff that states "I ha[v]e read the forgoing, RESPONSE TO STATUS REPORT and hereby verify that the matters alleged therein are true. I certify under penalty of Perjury that the forgoing is true and correct to the best of my knowledge and belief." (Doc. 83, p. 7.) Plaintiff's affidavit contains similar language and states "I declare under penalty of perjury that the foregoing is true and correct." (Doc. 104, p. 4.) Courts in this Circuit have found that "[u]nsworn declarations may substitute for sworn affidavits where they

are made under penalty of perjury and otherwise comply with the requirements of 28 U.S.C. § 1746." *Ray v. Pinnacle Health Hosps., Inc.*, 416 F. App'x 157, 164 n.8 (3d Cir. 2010).  Thus, because Plaintiff's Response to Status Report was verified and submitted under penalty of perjury, the court finds that that document satisfies the requirements of 28 U.S.C. § 1746[3] and is, for present purposes, afforded consideration equal to Plaintiff's affidavit in opposition to Defendants' motion.

Moreover, that one of the sworn statements is not deposition testimony does not preclude the court from invoking the doctrine because the doctrine is applicable in circumstances involving conflicting sworn statements, which includes, but is not limited to, deposition testimony.  Other courts have used the doctrine in similar circumstances.  *See, e.g., Ellison v. BHBC Nw. Psychiatiric Hosp.*, 2013 U.S.

---

[3]   That section provides as follows:

§ 1746. Unsworn declarations under penalty of perjury

Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

(1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date).
(Signature)".

(2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).
(Signature)".

Dist. LEXIS 51280, *7 n.3 (E.D. Pa. April 9, 2013) (utilizing doctrine where a prior *written statement* in the record was directly contradicted by subsequent affidavit, finding that the affidavit "fits the general mold of a sham affidavit" because it was clearly offered for the purposes of summary judgment).

        Having crossed those hurdles, the court finds the doctrine to be applicable here for several reasons. First, the statements are directly contradictory. To reiterate, Plaintiff states in his Response to Status Report that "the seeds were finally replaced by funds from the Chief of the Del[a]ware Nation . . . ." (Doc. 83, ¶ 4.) In his affidavit, Plaintiff emphatically states this did not happen. (Doc. 104, ¶ 3.) Thus, the two statements represent more than a mere discrepancy. *See Nguyen v. AK Steel Corp.,* 735 F. Supp. 2d 346, 377 (W.D. Pa. 2010 ) ("[A] district court is not required to disregard [an] affidavit in all cases merely because there is a discrepancy between the affidavit and prior [] testimony."). Second, Plaintiff does not address his prior admission, and offers no explanation for it. Third, Plaintiff offers no corroborating evidence to support the conflicting statement in the affidavit other than to state that "[t]he [N]ative American circle does not meet on Thursday, Wednesday's and Friday's." (Doc. 103, ¶ 31.) To the contrary, the evidence of record corroborates Plaintiff's *prior* statement that the seeds were distributed. Specifically, the declaration of Reverend Gagas states that on December 13, 2012, he received permission to procure the seeds, personally brought the seeds into SCI-Waymart, and personally witnessed the distribution of the seeds to Native American inmates at SCI-Waymart, including Plaintiff. (Doc. 98, SMF ¶¶ 19, 20; Doc. 98, Attachment 2.) In light of the corroborating evidence supporting Plaintiff's prior verified statement, and Plaintiff's failure to offer any plausible explanation for his

conflicting subsequent statement, the court finds the affidavit was offered solely for the purposes of defeating summary judgment and therefore it shall be disregarded. Having disregarded the affidavit, the court concludes that, based on the record before the court, no reasonable factfinder could find that the seeds were not redistributed. Accordingly, no genuine issue of material fact remains with respect to this claim, and the court will grant summary judgment for Defendants.

Lastly, as to Plaintiff's allegation that the prison's failure to adopt new storage procedures amounts to a due process violation, Defendants attached to their motion DC-ADM 819, which was enacted on February 1, 2013. (Doc. 98, Attachment 2.) Because the current version of DC-ADM 819 classifies medicine bags and their contents, including the Three Sisters, as "individual sacred objects" which may be stored in the inmate's cell, it appears as though Plaintiff's concerns regarding storage have been addressed. Plaintiff's only argument in response is that:

> The Three Sisters are not only "individual" sacred objects, but "Communal" sacred objects. They are used "within" the dogma of various ceremonies, they are part of the "Sacred Relics" on the altar of various ceremonies. Defendant's statement, "are defined" as individual sacred objects is wrong. An example of this would be defining the "Host" of a Christian ceremony as an individual sacred object. In fact it is when a[n] individual receives it, but, until he receives the host, it is a "Communal" sacred object.

(Doc. 103, ¶ 34.) Although vague, Plaintiff appears to take exception with Defendants' characterization of the nature of the seeds by arguing that the Three Sisters are not only for individual use, but also for communal use during ceremonies. However, nothing in DC-ADM 819 prevents Plaintiff from bringing the seeds to Native American religious ceremonies. In short, there is no genuine issue of material fact that the prison has adopted the proposed procedures related to the

16

handling and storage of sacred relics.  Accordingly, Defendants' motion will be granted.

**IV.** <u>**Conclusion**</u>

In accordance with the foregoing discussion, the court will grant Defendants' motion for summary judgment on all claims.  An appropriate order will issue.

                 <u>s/Sylvia H. Rambo</u>
                 United States District Judge

Dated: January 7, 2015.